IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMIE LEE SHERMAN, | ) |
| Plaintiff | ) ) ) ) |
| v. | ) )   NO. 1:19-cv-01036-SRW ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

**I.      INTRODUCTION**

Plaintiff Tommie Lee Sherman commenced this action on December 10, 2019, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff filed his application on September 29, 2016, alleging that he became disabled on November 16, 2015. (Tr. 15, 117, 122).[2] Plaintiff's application was denied at the initial administrative level. (Tr. 15, 45-57, 60). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), at which Plaintiff appeared with a paid, non-attorney representative. (Tr. 15, 26-44, 58-59, 66, 68). On January 28, 2019, the ALJ issued an unfavorable decision. (Tr. 15-21). Plaintiff appealed that decision, and the Appeals Council denied Plaintiff's request for review on October 16, 2019. (Tr.

---

[1]Kilolo Kijakazi became acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the actual transcript pages are denoted by the abbreviation "Tr."

1-5). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand this cause to the Commissioner for a new hearing and for further consideration under sentence four of 42 U.S.C. § 405(g). *See* Doc. 1; Doc. 11, at 12. The case is ripe for review pursuant to 42 U.S.C. § 405(g). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 6, 7. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.     STANDARD OF REVIEW AND REGULATORY FRAMEWORK[3]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However,

---

[3] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To evaluate the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240.

---

[5] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 62 years old at the time he filed his application for benefits and 64 years old at the time of the ALJ's decision. (Tr. 21, 45, 117). Plaintiff is a resident of Ozark, Alabama, and lives in a house with his family. (Tr. 45, 117,154). Plaintiff graduated from high school and had two years of junior college education. (Tr. 29-30, 140).

Plaintiff claims that his ability to work is limited by diabetes mellitus, high blood pressure, peripheral neuropathy, kidney disease, arthritis, chronic pain, heart disease, high cholesterol, and leg pains. (Tr. 46, 139). Plaintiff previously worked as a security guard and a sales clerk in an automotive parts store and is currently working as a mall security guard two to three times a week. (Tr. 17, 20, 30, 38, 162).

Following the administrative hearing, at which Plaintiff and a vocational expert testified, and employing the five-step process, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2020.

2. The claimant has not engaged in SGA since November 16, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: obesity, diabetes mellitus, status post coronary artery bypass grafting (CABG), chronic kidney disease (CKD), coronary artery disease (CAD), and peripheral vascular disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk six hours

      each in an eight-hour workday; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; and should avoid frequent exposure to temperature extremes and hazardous machinery and heights. He is unlimited in the ability to reach, handle, finger, talk and hear. He has the capacity for frequent near and far acuity and color vision.

    6.     The claimant is capable of performing past relevant work as a sales clerk as that work is done in the national economy. It is found at DOT# 290.477-014. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

    7.     The claimant has not been under a disability, as defined in the Social Security Act, from November 16, 2015, through the date of the decision (20 CFR 404.1520(1)).

(Tr. 17, 18, 20, 21).

## IV.    ISSUES ON APPEAL

Plaintiff raises two issues on appeal, arguing that the Commissioner failed to consider properly his past relevant work and that the ALJ's finding of his RFC is inconsistent with the accepted opinion of Dr. Harper and therefore not based on substantial evidence. (Doc. 11, at 1, 6, 10). The Commissioner maintains that the ALJ properly determined that Plaintiff could perform his past relevant work as a sales clerk and that the ALJ's RFC determination is supported by substantial evidence. (Doc. 12, at 4, 6-8).

## V.    DISCUSSION

### A.    Past Relevant Work

Plaintiff argues that the Commissioner failed to consider properly his past relevant work at step four of the sequential evaluation process. Specifically, Plaintiff contends that the Commissioner misclassified his past relevant work as a sales clerk instead of properly classifying his past relevant work as an automotive parts sales clerk. (Doc. 11, at 8-10). Plaintiff cites the *Dictionary of Occupational Titles* ("DOT"), which describes the job of sales clerk as follows:

6

"Obtains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store such as tobacco shop, drug store, candy store, or liquor store." Sales Clerk, DICOT 290.477-014, 1991 WL 672554. Plaintiff argues that he never worked in a store similar to a tobacco shop, drug store, candy store, or liquor store. (Doc. 11, at 8). Instead, Plaintiff says, he worked at O'Reilly's Auto Parts store where he "sold auto parts to customers," "processed transactions," and "carried auto parts to front desk to register." (Tr. 133, 167). According to Plaintiff, he had to lift 50 pounds occasionally and 25 pounds frequently and had to stand and walk about 7 hours a day. (Tr. 167). Plaintiff maintains that these actions reflect a medium exertional level of work, which is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." (Doc. 11, at 8); *see* 20 C.F.R. § 404.1567. Plaintiff contends that his job at O'Reilly's Auto Parts is more consistent with the job title, "Salesperson, Parts," which is described as follows: "Sells automotive, appliance, electrical, and other parts and equipment in repair facility or parts store." (Doc. 16, at 2); *see* Salesperson, Parts, DICOT 279.357-062, 1991 WL 672550. Plaintiff argues that any finding as to whether he could do his past relevant work as he performed it or as performed in the general economy is not based on substantial evidence because the ALJ compared the RFC to the wrong job title. (Doc. 11, at 9-10; Doc. 16, at 2).

At the fourth step of the sequential evaluation process, the ALJ must assess the claimant's RFC and the claimant's ability to return to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ uses the RFC to decide whether the claimant can perform his past relevant work by comparing the RFC assessment with the physical and mental demands of the claimant's past relevant work. *Rivera-Cruzada v. Comm'r of Soc. Sec.*, 741 F. App'x 737, 739 (11th Cir. 2018); 20 C.F.R. § 404.1520(e),(f). "In considering whether a claimant can return to past work, the ALJ must (1) consider all the duties of the past relevant work and (2) evaluate the claimant's ability to perform the duties in light of his impairments." *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951,

953 (11th Cir. 2018). If the claimant "can still do this kind of work," the ALJ will find that the claimant is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled."); *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). Thus, "[t]he regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." *Jackson*, 801 F.2d at 1293 (emphasis in original). "Accordingly, where the claimant's specific prior job might have involved functional demands and duties significantly in excess of those generally required for such work by employers in the national economy, the claimant must still demonstrate that, in addition to being unable to perform the excessive functional demands actually required by her former job, she cannot perform the functional demands and job duties of the position as generally required by employers nationwide." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing SSR 82-61, 1982 WL 31387, at *2, (S.S.A. Jan. 1, 1982)); *Smith*, 743 F. App'x at 953-54.

"The burden is on the claimant to show that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy." *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (citing *Jackson*, 801 F.2d at 1293-94); *Klawinski*, 391 F. App'x at 775; *Rivera-Cruzada*, 741 F. App'x at 739 ("At step four, the claimant bears the burden of persuasion."); *Bitowf v. Saul*, No. CV 1:19-00845, 2021 WL 1183794, at *11 (S.D. Ala. Mar. 29, 2021) ("Generally, a claimant is not disabled if he or she can perform past relevant work, 'either as the claimant actually performed it or as generally performed in the national economy.'" (quoting 20 C.F.R. § 404.1560(b)(2))). However, the ALJ has an obligation to develop the record regarding the requirements of a claimant's past relevant work. *Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 899 (11th Cir. 2019); *Waldrop*, 379 F. App'x at 953; *Lucas v.*

*Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citing *Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986)). "[A]n ALJ may rely on information contained in the *Dictionary of Occupational Titles* to determine whether a claimant can perform her past relevant work as it is generally performed in the national economy," *Scott v. Comm'r of Soc. Sec.*, 440 F. App'x 726, 728 (11th Cir. 2011), as well as the claimant's work history report. *McGhee v. Soc. Sec. Admin., Comm'r*, 826 F. App'x 894, 896 (11th Cir. 2020). "The ALJ may also rely on the testimony of a VE, 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments,'" *Rivera-Cruzada*, 741 F. App'x at 739 (citation omitted), although testimony from a vocational expert is not necessary at step four of the sequential evaluation process. *Lucas*, 918 F.2d at 1573 n.2; *Ward v. Astrue*, No. 1:10CV177, 2011 WL 1706342, at *3 (M.D. Ala. May 5, 2011).

In this action, the ALJ did not elicit any testimony at the hearing regarding Plaintiff's job as a sales clerk at an automotive parts store, but instead relied on Plaintiff's work history and earnings reports to determine the demands of Plaintiff's past relevant work as a sales clerk. (Tr. 20, 133, 162, 167). Plaintiff filled out a detailed "Work History Report" as part of his DIB application. (Tr. 162, 167). For each of his former jobs, the form instructed him to answer the following questions: "Describe this job. What did you do all day?" "In this job, how many total hours each day did you: Walk? Stand? Sit? Climb? Stoop? Kneel? Crouch? Crawl? Handle, grab or grasp big objects? Reach?" "In this job, did you: Use machines, tools or equipment? Use technical knowledge or skills? Do any writing, complete reports, or perform duties like this?" "Explain what you lifted, how far you carried it, and how often you did this." The form also asked Plaintiff to indicate for each job the "heaviest weight lifted," as well as the weight most "frequently lifted ... from 1/3 to 2/3 of the workday." (Tr. 167).

Plaintiff answered that he "sold auto parts to customers" and "processed transactions."

Plaintiff answered "yes" to using machines, tools or equipment" and to writing and completing reports, but answered "no" to using technical knowledge or skills. (Tr. 167). Plaintiff stated that he walked and stood for 7 hours; sat for 1 hour; climbed 1-2 hours; stooped for 2 hours; knelt 1 hour; crouched 2 hours; did not crawl; handled, grabbed, or grasped big objects for 2 hours; reached for 3 hours; and wrote, typed, or handled small objects for 3 hours. (Tr. 167). The heaviest weight Plaintiff lifted was 50 pounds, and he frequently lifted 25 pounds. (Tr. 167). Plaintiff did not supervise other people. (Tr. 167).

> The DOT describes the position of sales clerk as follows:
>
> Industry Designation: Retail Trade Industry
>
> Obtains or receives merchandise, totals bill, accepts payment, and makes change for customers in retail store such as tobacco shop, drug store, candy store, or liquor store: Stocks shelves, counters, or tables with merchandise. Sets up advertising displays or arranges merchandise on counters or tables to promote sales. Stamps, marks, or tags price on merchandise. Obtains merchandise requested by customer or receives merchandise selected by customer. Answers customer's questions concerning location, price, and use of merchandise. Totals price and tax on merchandise purchased by customer, using paper and pencil, cash register, or calculator, to determine bill. Accepts payment and makes change. Wraps or bags merchandise for customers. Cleans shelves, counters, or tables. Removes and records amount of cash in register at end of shift. May calculate sales discount to determine price. May keep record of sales, prepare inventory of stock, or order merchandise. May be designated according to product sold or type of store.

Sales Clerk, DICOT 290.477-014, 1991 WL 672554.

The sales clerk position is rated as light work with an exertional limitation of lifting 20 pounds occasionally and up to 10 pounds frequently. *Id*. The position does not require any climbing, balancing, kneeling, crawling, or feeling. The position does require occasional stooping, crouching, near acuity, far acuity, and color vision; it requires frequent talking, hearing, reaching, handling, and fingering. *Id*. Conditions involving extreme cold or heat, moving mechanical parts, or high exposed places do not exist. *Id*.

The position of "salesperson, parts" has the following description:

> Industry Designation: Retail Trade Industry; Wholesale Trade Industry
>
> Alternate Titles: Counter Clerk; Parts Clerk
>
> Sells automotive, appliance, electrical, and other parts and equipment in repair facility or parts store: Ascertains make, year, and type of part needed, inspects worn, damaged, or defective part to determine replacement required, or advises customer of part needed according to description of malfunction. Discusses use and features of various parts, based on knowledge of machine or equipment. Reads catalog, microfiche viewer, or computer for replacement part stock number and price. Advises customer on substitution or modification of part when replacement is not available. Examines returned part to determine if defective, and exchanges part or refunds money. Fills customer orders from stock. Marks and stores parts in stockroom according to prearranged system. Receives and fills telephone orders for parts. Performs other duties as described under SALESPERSON (retail trade; wholesale tr.) Master Title. May measure engine parts, using precision measuring instruments, to determine whether similar parts may be machined down or built up to required size. Usually specializes in selling parts for one type of machinery or equipment and is designated according to part sold, as Counter Clerk, Appliance Parts (retail trade; wholesale tr.); Counter Clerk, Automotive Parts (retail trade; wholesale tr.); Counter Clerk, Farm Equipment Parts (retail trade; wholesale tr.); Counter Clerk, Industrial Machinery and Equipment Parts (retail trade; wholesale tr.); Counter Clerk, Radio, Television, and Electronics Parts (retail trade; wholesale tr.); Counter Clerk, Tractor Parts (retail trade; wholesale tr.); Counter Clerk, Truck Parts (retail trade; wholesale tr.).

Salesperson, Parts, DICOT 279.357-062, 1991 WL 672550.

Based upon Plaintiff's work history report and the DOT, the ALJ properly determined that Plaintiff's past relevant work was that of "a sales clerk as that work is done in the national economy." (Tr. 20). After comparing Plaintiff's RFC with the physical and mental demands of the position of sales clerk, the ALJ concluded that Plaintiff was able to perform that position as it is generally performed in the national economy. (Tr. 21). The ALJ also found that the RFC precluded the performance of the work as it was actually performed by Plaintiff because the RFC limited Plaintiff to lifting at the light exertional level. (Tr. 21).

Although Plaintiff argues that he performed the job in question at a medium exertional level, the ALJ specifically found that Plaintiff could perform the sales clerk position *as it is generally performed* in the national economy, which is rated as light work and which also complied

with the RFC determination. While Plaintiff maintains that his work history is more consistent with the position of parts salesperson, that position's description states that such a worker "[a]scertains make, year, and type of part needed, inspects worn, damaged, or defective part to determine replacement required, or advises customer of part needed according to description of malfunction;" "[d]iscusses use and features of various parts, based on knowledge of machine or equipment;" "[a]dvises customer on substitution or modification of part when replacement is not available;" "[e]xamines returned part to determine if defective;" and "[m]ay measure engine parts, using precision measuring instruments, to determine whether similar parts may be machined down or built up to required size." Salesperson, Parts, DICOT 279.357-062, 1991 WL 672550. Thus, that position appears to require a certain amount of technical knowledge or skills. However, on his work history report, Plaintiff answered "no" to the question of whether he used technical knowledge or skills. (Tr. 167). As Plaintiff bears the burden of persuasion at step four, the court finds that Plaintiff has failed to establish that the ALJ's determination of Plaintiff's past relevant work as a sales clerk is not supported by substantial evidence.

      Moreover, even if the ALJ erred in failing to classify Plaintiff's past relevant work as a parts salesperson, that error would be harmless. The exertional limitations of the two positions are virtually identical. The "salesperson, parts" position is rated as light work with an exertional limitation of lifting 20 pounds occasionally and up to 10 pounds frequently. Salesperson, Parts, DICOT 279.357-062, 1991 WL 672550. The position does not require any climbing, balancing, kneeling, crawling, feeling, or far acuity. The position does require occasional stooping, crouching, and color vision; it requires frequent talking, hearing, reaching, handling, fingering, and near acuity. *Id*. Conditions involving extreme cold or heat, moving mechanical parts, or high exposed places do not exist. *Id*.

      The ALJ found that Plaintiff had following RFC:

> lift 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk six hours each in an eight-hour workday; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; and should avoid frequent exposure to temperature extremes and hazardous machinery and heights. He is unlimited in the ability to reach, handle, finger, talk and hear. He has the capacity for frequent near and far acuity and color vision.

(Tr. 18).

The DOT reflects that both the sales clerk and parts salesperson positions are performed at the light exertional level and that the demands of the two positions as they are generally performed in the national economy are within the limitations of Plaintiff's RFC. Either DOT description of Plaintiff's past relevant work complies with Plaintiff's RFC. Accordingly, the court finds that the ALJ's determination as to Plaintiff's past relevant work at step four is supported by substantial evidence.

### B.   RFC in Relation to Dr. Harper's Opinion

Plaintiff argues that the ALJ's determination of his RFC is inconsistent with the ALJ's acceptance of Dr. Harper's opinion. (Doc. 11, at 10). Specifically, Plaintiff cites the ALJ's decision, which states:

> As for opinion evidence, on December 22, 2016, Howard C. Harper, Jr., M.D., a State agency medical consultant, completed a physical residual functional capacity (PRFC) assessment indicating that the claimant could perform light work with frequent climbing of ramps and stairs, balancing, stooping, kneeling, and crouching; *occasional crawling*; no climbing of ladders, ropes, or scaffolds; and avoidance of temperature extremes and unprotected heights (Exhibit 1A). The undersigned gives the PRFC assessment substantial weight. Dr. Harper is familiar with Social Security law and regulations, and his PRFC assessment is generally consistent with the record as a whole.

(Tr. 20) (emphasis added).

Plaintiff contends that, despite Dr. Harper's opinion that Plaintiff could perform light work with *occasional crawling,* the ALJ determined that Plaintiff could perform light work with *frequent crawling*, yet the ALJ failed to explain why this portion of Dr. Harper's opinion was

13

rejected. (Tr. 11-12).

"Administrative law judges are not bound by any findings made by State agency medical or psychological consultants[.]" 20 C.F.R. 404.1527(e)(2)(i). Thus, "[t]he ALJ is not required to include every limitation into his or her RFC determination simply because he or she assigned great or significant weight to a medical opinion." *Rosario v. Comm'r of Soc. Sec.*, No. 6:12-CV-1687, 2014 WL 667797, at *2 (M.D. Fla. Feb. 20, 2014). However, the ALJ "is required to provide a reasoned explanation as to why he or she chose not to include particular limitations in his or her RFC determination." *Id*. (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) and *Monte v. Astrue*, Case No. 5:08-cv-101, 2009 WL 210720, at *6-7 (M.D. Fla. Jan. 28, 2009) (An "ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.")).

At step four, the ALJ determined Plaintiff's past relevant work to be that of a sales clerk. Given that the position of sales clerk—and, for that matter, parts salesperson—does not require any crawling as those positions are generally performed in the national economy, any error by the ALJ in failing to explain his rejection of Dr. Harper's opinion that Plaintiff was restricted to occasional crawling, rather than frequent crawling, is therefore harmless.

**VI.    CONCLUSION**

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED. A separate judgment will issue.

DONE, on this the 31st day of August, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge